# IN THE COURT OF APPEALS OF IOWA

No. 25-0774
Filed November 13, 2025

**IN THE INTEREST OF R.A., C.A., and L.O.,**
**Minor Children,**

**T.O., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Stephanie Forker

Parry, Judge.

        A mother appeals the termination of her parental rights to her three children.

**AFFIRMED.**

        Elizabeth Z. Stanley, Sioux City, for appellant mother.

        Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

        Theresa O'Brien, Sioux City, attorney and guardian ad litem for minor

children.

        Considered without oral argument by Chicchelly, P.J., and Buller and

Langholz, JJ.

**LANGHOLZ, Judge.**

After five years of child-welfare involvement with the family, the juvenile court terminated the mother's parental rights to her three sons—ages five, one and a half, and four months at the time of the termination hearing.[1] Over those years, the mother struggled with substance use and continuously exposed her children to unsafe and unstable conditions—including contact with the father of the two younger children who also struggled with substance use and physically abused the oldest son. When the juvenile court first decided against moving to a permanency goal of termination and gave the mother six more months to work towards reunification, she ended up leaving the oldest son alone with the father again and he abused the son once more. So the juvenile court denied her request for another six months and terminated her parental rights to all three of her children.

The mother makes two challenges on appeal. First, she challenges some of the statutory grounds for termination. And second, she argues that the juvenile court should have given her six more months to work towards reunification rather than terminating her rights. But the mother left one of the grounds for terminating her rights to all three children unchallenged, so we affirm termination under that ground. And because the mother has already been granted an additional six months and did not make meaningful progress, we agree with the juvenile court that the need for termination will still exist at the end of another six months. We thus affirm the juvenile court's decision terminating the mother's parental rights.

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

## I.      Background Facts and Proceedings

This family first came to the attention of the Iowa Department of Health and Human Services ("HHS")[2] in February 2020 when it was alleged that the mother had left the oldest son alone at home when he was just seven months old. The mother said that she believed there was another adult at the home to supervise him—but there was not. The mother and father[3] were living together at this time, and it was also alleged that they used drugs in the son's presence. The mother denied these allegations. Many family and child-abuse assessments followed over the next few years, but no child-in-need-of-assistance proceeding was started in juvenile court.

Then in February 2023, the oldest son showed up to preschool with bruising on his face. It was alleged that the father was responsible after the son told school staff "daddy [father] strong door." An attempt to interview the son was compromised when the mother suggested to him that he had fallen into a fan. The father too denied the allegations. But the examining physician opined that the son's injuries were indicative of blunt force trauma. And so, HHS ultimately found that the father had physically abused the son. The son was adjudicated as a child in need of assistance. And originally, the son was allowed to stay in the mother's custody under a safety plan, in which she agreed not to allow any unsupervised contact between the father and the son.

---

[2] At the time, the department was known as the Iowa Department of Human Services. But we use its current name consistently in this opinion.

[3] Although the man is the father of only the mother's two younger children—and not the oldest child—we refer to him as "the father" for readability. The oldest child's biological father abandoned him and that father's whereabouts were unknown during the termination proceeding.

But after the mother, the father, and the son all tested positive for marijuana, the son was removed from his parents' custody in September 2023. Later that month, the mother gave birth to her second son. While she was allowed to leave the hospital, when the umbilical-cord-blood-test results came back positive for marijuana, he was also removed from her custody in early October. And then the next month, he too was adjudicated as a child in need of assistance.

At the start of January 2024, the two sons were returned to the mother on a trial home placement and then returned to the mother's custody later that month. But this was short-lived after sweat patch drug tests administered to both parents returned positive for methamphetamine. The oldest son also tested positive for methamphetamine with a hair stat test "at an ingestion level." And the younger son could not have a hair stat test done because the father had cut his hair. So the sons were again removed from the mother's custody at the end of January.

From there, the mother took steps to improve her situation. She attended weekly mental health therapy services and was assigned a "peer support worker/recovery coach." She attended both group and individual sessions of Alcoholics and Narcotics Anonymous. She also began family treatment court and parenting classes. She completed numerous drug tests, all of which returned negative results for all substances tested. She maintained a job and when offered additional time to see her children, she took full advantage of each opportunity. Based on these improvements, at the August 2024 permanency hearing, the court granted her and the father six more months to work towards reunification.

The mother made enough progress that the oldest son's visits increased and a trial home placement for the middle son began in mid-October 2024. She

gave birth to her third son a few weeks later in early November. While the father also had a trial placement with the middle son, he was still not allowed to have unsupervised contact with the oldest son because of his past abuse.

Even so, about a week after the youngest son was born, the oldest son told his mother that the father "choked him and hit his head against the wall." Despite the prohibition on unsupervised contact between the father and the oldest son, she had left the two of them alone. The oldest son had a bruise on his cheek, and when asked about it, he said, "[the father] did it." Still, the father denied the incident, saying the oldest son had been having problems with lying.

Initially, the two younger sons were permitted to stay with the mother based on the agreement that the father would leave the residence. Still, the youngest son was adjudicated in need of assistance, like the older two sons. But after an HHS worker saw the mother allowing the father back into her home again and continued to have concerns about the mother's substance use and mental health, both younger sons were removed at the end of January 2025.

The State petitioned to terminate the mother's parental rights to all three children. And after the February 2025 termination hearing, the juvenile court terminated the mother's parental rights to all three.[4] The mother now appeals.

## II. Statutory Grounds for Termination

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show that

---

[4] The juvenile court also terminated the parental rights of each of the sons' fathers. Neither of those fathers appealed the termination order.

termination is in the best interests of the children. *Id.* And finally, the parent bears the burden to show whether a discretionary exception applies that should preclude termination. *Id.* But when a parent does not contest one or more steps on appeal, we need not address them. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We review a termination decision de novo, giving "respectful consideration" to the juvenile court's fact findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The mother first challenges whether the State has met its burden to prove grounds for termination of her parental rights under Iowa Code section 232.116(1). But she only argues that the State failed to prove grounds for termination for her younger two sons[5] under paragraphs "h," and "i," and for her oldest son under paragraphs "f" and "i." Yet the juvenile court also terminated her parental rights to all three children under other independent grounds—paragraph "d." And termination need only be supported by one statutory ground for us to affirm. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (holding that the juvenile court's termination order could be affirmed on any one of "six independent grounds for termination" relied on by the juvenile court).

Because the mother makes no argument against termination under paragraph "d," she has waived any challenge to termination on that statutory ground and we can affirm based on that ground without discussing it further. *See In re G.N.*, No. 20-1128, 2020 WL 7022388, at *1 (Iowa Ct. App. Nov. 30, 2020) (affirming based on unchallenged statutory grounds and collecting cases doing the

---

[5] While the mother makes this argument as to both younger sons, the juvenile court did not terminate her rights to the youngest son under either cited paragraph.

same); *see also P.L.*, 778 N.W.2d at 40 (reasoning that the appellate court did not have to analyze a statutory ground not challenged by the parent on appeal). And since it would not matter whether termination is supported by the grounds that she challenges on appeal, we do not consider the merits of those arguments. *See G.N.,* 2020 WL 7022388, at *1; *see also In re Est. of White*, No. 23-1009, 2024 WL 3887438, at *3 (Iowa Ct. App. Aug. 21, 2024) ("The appellate court will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds." (quoting 5 C.J.S. Appeal & Error § 839 (May 2024 Update))).

### III. Additional Six Months

The mother's only other argument is that the juvenile court should have given her six more months to work towards reunification rather than terminating her rights. *See* Iowa Code §§ 232.117(5), 232.104(2)(b). A court may give more time "only if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). On our de novo review, we agree with the juvenile court that the need for removal will still exist in six months.

First, the mother was already given an additional six months. And during that time, she allowed the father to have unsupervised contact with the oldest son, resulting in the five-year-old being grabbed by the neck and shaken. And this was not the first time the father had abused the son. So the mother did not show that she could be trusted to prevent unsupervised contact between the father and the son. Nor did she show that by the end of another six-month extension those concerns would no longer be present. *See In re C.K.*, 558 N.W.2d 170, 172

(Iowa 1997) ("[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future.").

What's more, the mother has had five years with many supportive services offered to her to help her to correct the problems that have been the basis for terminating her parental rights. But still she failed to correct these problems. The mother has had substance-use issues for many years. Her oldest son tested positive for methamphetamine at an "ingestion level." And the middle son's umbilical cord testing was positive for marijuana. The mother has not given an explanation for these positive tests. Instead, she has repeatedly lied to HHS about the children, the father, and her substance use. And after showing progress in 2024, the mother failed to sustain it. Any progress she made was temporary and did not reflect a lasting change in her ability to protect and care for the children.

These children have not had a stable home their entire lives. The mother's youngest son has had four placements all before his first birthday. The mother has had five years to make the necessary changes to ensure custody of her children. Yet she has continuously made poor decisions and lied about them. We agree with the juvenile court that more "time will not fix what has been broken for a lengthy period of time." These children need safety, permanency, and stability. For all these reasons, we affirm the juvenile court's denial of the mother's request for more time and the termination of her parental rights to all three children.

**AFFIRMED.**